I Judge PATRICIA RIVET MURRAY.
Plaintiff, Terrance Collins [1], appeals the trial court’s judgment finding that the defendant, Dr. Windsor Dennis, is not liable for medical malpractice. For the reasons that follow, we affirm.
On November 17, 1993, Terrance Collins, then thirteen years old, fractured his right forearm when he slipped and fell in wet, muddy grass while playing with a friend. The Mend’s parents took Terrance to the emergency room at United Medical Center, where he was treated by Dr. Windsor Dennis, an orthopedist.[2] Dr. Dennis cleaned the skin and wound with a *1013 Betadine sponge, did a closed reduction of the fracture, prescribed an oral, broad spectrum antibiotic, and had the patient schedule a return visit to his office within 48 hours. Mr. Collins did not return to Dr. Dennis’ office for the scheduled visit. Five days later, he was experiencing severe pain in his arm and leakage from the cast. He went to the 1 ¡.,emergency room of Ochsner Hospital, where it was determined that he had a serious infection of the forearm.
Mr. Collins’ malpractice claim was first presented to a medical review panel, which concluded that Dr. Dennis did not violate the applicable standard of care in his treatment. The matter was tried before a jury on August 7-9, 2000, which also found that Dr. Dennis’ treatment of Mr. Collins met the standard of care. On appeal, Mr. Collins argues that there was no reasonable evidentiary basis for the jury’s verdict.
It is axiomatic that a court of appeal may not set aside a jury’s finding of fact in the absence of manifest error, or unless it is clearly wrong; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989) (Citations omitted). Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. Id. Moreover, when findings are based on determinations regarding the credibility of witnesses, the manifest error standard requires that great deference be afforded to the trier of fact’s findings. Id.
Mr. Collins first argues that the trial court’s conclusion is manifestly erroneous because no reasonable jury could have found, based on the evidence, that Dr. Dennis’ failure to treat an open fracture by surgical debridement met the applicable standard of care. In essence, plaintiff argues that because the fracture |3was open, it required surgical cleaning, which Dr. Dennis admittedly did not provide.
Plaintiffs argument is not supported by the evidence, however. No physician testified that surgical debridement is necessary in every instance of an open fracture; rather, all agreed that in a very small percentage of cases (those in which the treating physician is presented with a small, clean wound and makes the clinical judgment that the bone has not protruded through the skin), the conservative treatment approach used by Dr. Dennis is appropriate. Dr. Dodson, the expert whose testimony was the most favorable to the plaintiff, initially testified that all open fractures must be treated surgically; later, however, he admitted that he would recognize an exception in a case in which the physician had made a clinical judgment that the bone had not protruded through the skin. The major factual dispute at trial, therefore, concerned whether Mr. Collins’ fracture could reasonably be considered one of the few cases in which conservative treatment is acceptable. Crucial to making this determination was the evidence concerning the appearance of the wound when Mr. Collins arrived at United Medical Center. The jury heard two directly conflicting accounts.
Dr. Dennis testified that he classified Mr. Collins’ fracture as “open” because of the presence of a small, pinpoint-sized puncture of the skin near the fracture site, which oozed blood only when he manipulated the area. He also stated that the wound seemed clean; there were no visible grass particles or mud. Based on these observations, Dr. Dennis did not believe the bone had come | ¿through the skin, and he decided to treat the patient conservatively. Therefore, he cleaned the wound with a Betadine sponge, performed a *1014 closed reduction of the fracture, prescribed an oral, broad-spectrum antibiotic (Keflex), and scheduled a return visit for Mr. Collins within 48 hours. Dr. Dennis’s testimony regarding the appearance of the wound was corroborated by Dr. Murray, the emergency room physician who first saw Mr. Collins at United. Dr. Murray denied seeing a laceration or exposed bone. He further testified that if the wound had appeared dirty or he had seen any mud or grass particles, he would have cleaned the patient’s arm, but he did not do so. Moreover, the United medical records, although they denoted that Mr. Collins had been injured by falling on grass, did not reflect the presence of either mud or of exposed bone. Finally, the x-rays ordered by Dr. Murray, also introduced at trial, showed the bone to be well within the margins of the skin at the time Mr. Collins arrived at United.
In contrast to this evidence, Mr. Collins testified that as a result of his fall, he saw “blood and pus and a lot of muddy water and dirt and stuff dripping out of my arm.” Further, he stated that he saw his “bone sticking out.” Ms. Rosetta Jackson, who brought Terrance Collins to the United emergency room, also testified that Terrance’s arm was bleeding profusely and the bone was “pushed to the point where it was coming up out of the skin.” Finally, plaintiff presented testimony from Dr. Cary, Dr. Dodson, and Dr. Ochsner confirming that a bone subjected to trauma can protrude through the skin and then retract, which could [.«¡account for the discrepancy between the x-rays taken at United and the testimony of plaintiffs witnesses concerning the appearance of the wound.
A second point of conflict relating to the appearance of the wound was the size of the laceration, which Dr. Dennis testified was only a pinhole. Plaintiff presented the Ochsner records and the testimony of Dr. Dodson to show that when Mr. Collins was admitted to Ochsner, the size of the laceration in his arm was 1.5 centimeters, significantly larger than that observed by Dr. Dennis. On cross examination, however, both Dr. Dodson and Dr. Ochsner admitted that it was possible for the size to have increased because of necrosis of the surrounding tissue.
In view of the conflicting evidence, plaintiff alternatively argues that, given the history of Mr. Collins having fallen in grass combined with the presence of an open fracture, Dr. Dennis should have assumed that the bone had come in contact with the outside environment and had become contaminated. According to this argument, Dr. Dennis breached the standard of care by treating the fracture conservatively, regardless of the appearance of the wound.
Whether plaintiffs argument presents a reasonable view of the evidence is not a question for this court. Rather, our task is to determine whether the jury’s determination is reasonable and is supported by the evidence. In the instant ease, it is unquestionable that the jury’s conclusion that Dr. Dennis did not breach the standard of care is a reasonable interpretation of the evidence. The jury was forced to choose between two conflicting views of the evidence. Assuming the jury | ^believed the testimony of Dr. Dennis and Dr. Murray concerning the appearance of the wound and rejected the testimony of Mr. Collins and Ms. Jackson, the preponderance of the medical testimony clearly showed that Dr. Dennis’s conservative treatment of the fracture was an acceptable option within the standard of care.[3] *1015 We have no basis upon which to disturb the credibility determinations made by the jury-
Accordingly, we do not find the trial court’s conclusion to be manifestly erroneous or clearly wrong. The judgment of the trial court is therefore affirmed.
AFFIRMED.

. Sharon Collins originally filed suit on behalf of her minor son, Terrance, who was substituted as plaintiff when he became a major during the pendency of this action.

. Initially, the hospital refused to treat Terrance without a medical card. Because his mother did not have a phone, Terrance called a friend of his mother, Ms. Shirley Jenkins, who came to the hospital with her medical insurance card and apparently identified Terrance as her son; Terrance was treated under the name of "Travis Jenkins.”

. The parties also dispute whether there was proof that Mr. Collins failed to take the antibiotic prescribed by Dr. Dennis. While this factor, along with Mr. Collins' admitted fail *1015 ure to make his return visit to United, would be relevant had the jury reached the issues of causation and/or comparative negligence, they are not relevant to the determination of whether Dr. Dennis breached the standard of care. We therefore omit any discussion of these issues.